Philadelphia,
Saturday,
January 6.

## Case of the SCHUYLKILL FALLS' ROAD.

It is not necessary that an appointment of viewers &c. to lay out a road, should *state* that they are " freeholders and " inhabitants " near where " complaint is " made for want " of a road," although the act of assembly requires them to be so. This court will presume that the Quarter Sessions have made the appointment according to law.

A reference to the improvements through which a projected road is to pass, need not be made in the report of the viewers &c. They may be shewn in the plot or draft.

The sessions have power to order a re-review, although the law does not expressly authorize it.

This court does not hear evidence upon a *certiorari* to the Quarter Sessions to remove the proceedings in a road cause.

If it appears by the report, that a county commissioner attended the view, it is sufficient to shew that notice was given to the commissioners, agreeably to the standing order of the sessions.

*CERTIORARI* to the Quarter Sessions of *Philadelphia* county, to remove all petitions, orders, &c. upon a certain application by *Samuel Wheeler* and others, trustees of the Schuylkill Falls' Bridge, for a road from the western end of the said bridge, towards the old *Lancaster* road, near the seven-mile stone.

The petition for the road was presented to the Quarter Sessions at the *June* sessions 1808, when six viewers were appointed, without specifying in the appointment *their place of residence or that they were freeholders;* and their report was made to *September* term following, stating that they had viewed the ground in the presence of two county commissioners, (a standing order of the sessions requiring two days' notice of the time and place of such views to be given to the commissioners,) and that they had proceeded to lay out a public road by the courses and distances mentioned in the report, which they were of opinion should be of the breadth of fifty feet. To this report was attached a plot or draught of the road, shewing the face of the adjacent country, and the improvements through which the road would pass.

At the *September* sessions the court made an order of review, and appointed six reviewers with the same omission as before, who made a report to *December* sessions 1808, stating the attendance of the commissioners, and altering

the courses of the road, a draught of which and of the improvements was in like manner attached.

At the *December* sessions an order of re-review was made upon the petition of the trustees above mentioned, and six re-reviewers appointed as before, who at *March* sessions 1809 reported their approbation of the road first returned, and that they had proceeded to lay it out, one of the county commissioners attending, according to the courses and distances contained in the report. A similar draught was also attached to this report; and thereupon the court at the same sessions confirmed the report of the re-reviewers, ordered the road to be entered of record, and directed the supervisors to open it of the breadth of forty feet.

*M'Kean* and *Levy*, on behalf of *George Aston* through whose farm the road was laid out, took seven exceptions, upon which they moved to quash the proceedings of the court below.

1. That the viewers and re-reviewers were not appointed from the inhabitants near where the complaint was made for want of the road.

2. That the viewers and re-reviewers had made no reference to the improvements through which the road was to pass.

3. That the court granted a re-review, whereas by law the court had no power to grant it.

4. That the court approved and confirmed the road at the same sessions to which the report of re-reviewers was made; whereas it could not be entered on record and become a road, until the court next after that to which the report was made.

5. That the court of Quarter Sessions ordered that notice should be given to the commissioners of the county of *Philadelphia*, of the time of the meeting of the viewers, and it did not appear by the record that such notice was given, or that the said county commissioners attended at the said re-review.

6. That it was not stated that the viewers were freeholders, or that the reviewers were freeholders, or that the re-reviewers were freeholders.

1810.

SCHUYLKILL
FALLS' ROAD.

2 B 250,
21 SC 622

1810.

SCHUYLKILL
FALLS' ROAD.

7. That the said road was approved, confirmed, and ordered, when it should have been disapproved, rejected, and vacated.

1. and 6. Upon the first and sixth exceptions they argued, that the powers of the Quarter Sessions in road causes, being in derogation of the common law, and affecting the property of individuals, should be strictly pursued according to the act of assembly, and should so appear upon the face of the proceedings. In this subordinate office the sessions stand upon the footing of an inferior and limited jurisdiction. Their proceedings are not to be supported by intendment, but by their conformity to the statute upon which they are founded, which must be plainly set out. *The King* v. *Manning* (a), *The King* v. *Mayor of Liverpool* (b), *The King* v. *The Inhabitants of Stroud* (c), *The King* v. *Croke* (d), *Fortescue* 327. The act of 6th *April* 1802, 5 *St. Laws* 178, requires the court to appoint " six discreet and reputable *free-* " *holders*, of the inhabitants *near* where complaint is made " of the want of a private or public road or highway." The appointment does not pursue the words of the law, nor does it state the fact of freehold and inhabitancy; and the truth is, that all the viewers live several miles from the road, and one of them is not a freeholder. If this appeared on the face of the appointment, the court would certainly quash the proceedings. We should therefore either be permitted to give evidence upon the *certiorari*, which we agree is not the practice in cases like this, or the strict rule should be adopted. There is no third course left, but to wink at every irregularity committed by the sessions.

2. The second exception is not answered by the draught. The law requires references to the improvements, in addition to the draught, that the court when called upon to approve, may know in what manner orchards, meadows, plough land and the like will be affected. It is obvious that the draught must be much less definite than a written report; but it is sufficient for us that the act requires both.

3. The 22d section authorizes a review, but not a re-

(a) 1 *Burr.* 377.          (c) 1 *Stra.* 315.
(b) 4 *Burr.* 2245.          (d) *Cowp.* 26.

review, and the court have therefore exceeded their authority. Both reviews and re-reviews were formerly matter of practice only. 1 *Dall.* 11. But the act of 1802 was intended to incorporate all parts of the practice which it was thought proper to retain, and it cannot be exceeded.

4. The fourth exception is waived.

5. The attendance of the commissioners is not evidence of notice. It might have been casual, and without a knowledge of the object. The order required two days' notice to give them an opportunity to make objections; and *The King* v. *The Mayor of Liverpool* is decisive that the notice should be stated.

*Sergeant* and *Morgan contra.* 1 and 6. The first and sixth exceptions are founded on a mistake. The Quarter Sessions is not a court of limited jurisdiction, in the sense in which those terms are used in the cases referred to. It is a court of record established by the constitution; and although limited, as this court also is as to the objects of jurisdiction, yet its powers are general in all cases of which it takes cognizance. The authorities cited apply only to courts appointed by act of parliament for special purposes and with limited powers, or to cases of convictions, followed by a penalty, and not to orders like the present. If they were held to govern this case, it would be necessary for the sessions to set forth even the qualifications of jurors. This court has however repeatedly held, that where no irregularity appears upon the proceedings of the sessions, none is to be presumed; and a contrary doctrine would vacate every road that the sessions have ever confirmed. The act of 1700, 1 *St. Laws* 16, under which most of the roads in this part of the commonwealth have been laid out, directed the appointment of six sufficient *housekeepers* of the neighbourbood inhabiting *near* &c.; but the appointment never set out the qualification. Not an instance is to be found in a century. If the viewers are unqualified, the objection should be made in the sessions. Asking for a review did in fact admit that the proceedings on the view were formal.

2. The second exception is not founded in fact. The draught sets forth the improvements with greater certainty, than a written report could possibly do; and the act does not

require both, but by the position of the sentence evidently demands that the references should be made in the draught. If however neither report nor draught makes any reference to improvements, this court must presume that there are none.

3. By the 1st and 22d sections taken together, the sessions are to direct reviews as often as occasion shall require. After the first review, every view is a re-review, and therefore comes within the authority of the court. A re-review is however as much matter of practice since the act, as a review was before, and has become according to 1 *Dall.* 11. as much a matter of right. But suppose the re-review to have been irregular, it is merely surplusage. The re-reviewers approve the road laid out by the viewers; and that is the road which the sessions have confirmed.

5. The notice to the county commissioners is not required by law. It is an order of the court below; and this court is not to vindicate a rule, which the court who made it did not think proper to enforce. But the object of the rule was only to inform the county officers of intended roads, that the county might not be unnecessarily burthened; and the attendance of the commissioners is decisive evidence that the object of the rule was attained. They do not, and never have objected to the road.

YEATES J. delivered the court's opinion.

The counsel of Mr. *George Aston* who opposed this road, have taken six specific exceptions thereto; each of which shall be considered.

We will follow the example of the counsel, and observe on the first and sixth exceptions together. The act of the 6th of *April* 1802, 5 *St. Laws* 178. directs that " on a petition for " a public or private road, the justices of the Court of Quarter " Sessions of each county shall have power in open court, to " order and appoint six discreet and reputable *freeholders*, of " the *inhabitants near* where complaint is made for want of a " road, to view the ground proposed for the said road &c." It has been objected, that the persons appointed as viewers and re-reviewers of this road, were not *freeholders* and *inhabitants near* the road, in *fact;* and that it is absolutely necessary that it should appear on the face of the proceedings, that

1810.

SCHUYLKILL
FALLS' ROAD,

they possessed such qualifications. How that fact really is, we have no mode of ascertaining, unless by hearing testimony thereon, which we think would be highly irregular and improper. This we know, that we cannot collect from the proceedings, that the persons so appointed were not *freeholders*, and *inhabitants near* the road. If such had been the case, it would clearly be error, because we should be bound to pronounce it a deviation from the law. We admit the rule to be, that inferior jurisdictions must appear to have pursued their authority strictly, and that no intendment shall be made in their favour; but we think it not applicable to the court of Quarter Sessions of the Peace established by the 5th article of our constitution. The law will not intend that they have committed an error, when acting on a subject clearly within their jurisdiction; but will presume in cases before them, which admit of presumption, *omnia esse rite acta*. Should the principle on which this exception is founded be sustained, we much fear, that almost every road in the state, laid out by the sessions, would be subject to reversal. The old act of 1700, (1 *St. Laws* 16.) provides that the justices of each county court shall order and appoint six sufficient *housekeepers* in the *neighbourhood, inhabiting near* the place where the complaint is made for want of a road, to view &c. Should the confirmation of the present road be vacated on the grounds above urged, consistency of decision must oblige us to reverse the proceedings of the county courts under the act of 1700, when it does not appear on the face thereof, that *housekeepers* of the *neighbourhood inhabiting near* the road have been appointed as viewers. The several members of this court do not recollect a single instance in all their experience, wherein these qualifications of the viewers *appear* on the record. The exception strikes us as being perfectly novel.

2. The second exception is, that the viewers or the re-reviewers have made no reference to the improvements, through which the road passes. But this is not warranted by the fact. The plot or draught of the road annexed to the returns, does refer to the improvements, with much seeming correctness; and it appears to the court that such references should be on the draught, by the plain words of the act. Where different courses and distances have been returned by

several sets of men, the sessions are enabled on a view of the draughts and improvements laid down therein, to contrast them and determine on the shortness of the distance, and injury to private property, which seems to be the object the legislature had in view by this provision. The compensation to the individual for the injury done to his private property, comes before other viewers for their decision.

3. We see no weight in the exception, that the sessions had no power to grant a re-review. It is a second review directed for the information of the minds of the court. Many cases may occur, where from local circumstances it may be difficult for the court to form their judgment on the relative merit of two different returns. The members of the court may suppose that the viewers and reviewers possessed equal disinterestedness, respectability of character, and knowledge of the ground through which the road passes; and their minds may balance between them. What more proper medium of information could be pointed out in such a case, than the view of other discreet and reputable men, to determine to which of the returns the preference should be given, or lay out a road by a new route, which would combine the public and private interest? The sessions ultimately decide upon all the information they can obtain.

4. The fourth exception has been abandoned.

5. It is objected, that it does not appear, that notice of the view or re-review was given to the commissioners of the county, pursuant to the order of the sessions. The object of such order must have been to prevent the county being burthened with unnecessary roads of no public utility. It is a prudential precaution, though not found in the words of the law. Here three different sets of men have agreed on the necessity of a public road as prayed for. Two of the commissioners were present at the view, and one commissioner attended the re-review. If the order of the sessions had not been complied with, we may reasonably suppose, that this objection would have been made to the court below, on a road so much contested; and this not having been done, we may fairly presume, that due notice was given to the commissioners, some of whom attended.

7. The last is a general sweeping exception, referring to particular objections before made, and observed upon.

Upon the whole, on full consideration, we are of opinion that the proceedings of the sessions should be confirmed.

Proceedings confirmed.