Case of a Road from the West End of Pomfret Street, Carlisle.

CERTIORARI.

The Court of Quarter Sessions, under the act of the 6th of *April*, 1802, have power to grant a re-review of a road, though two former sets of viewers have reported in favour of the road.

The opinion of the court was delivered by

HUSTON, J.—*Certiorari* to remove the proceedings on the petition for a road from the west end of *Pomfret* Street, in the borough of *Carlisle*, and intersecting the *Newville* road, about one hundred perches east of *John Higgin's* house, at a small hill on the land late of *John Creigh*, Esq.

In this case, the petition was presented at *November* Sessions, 1825, and the court appointed viewers. Five of them reported in favour of a public road, in due form, to *January* Sessions, 1826, which was read and approved *nisi*. At *April* Sessions, 1826, a petition for a review was presented, and six reviewers appointed; who met, and four of them confirmed the former report, and at *August* Sessions, this was read and confirmed *nisi*. A petition was presented at *November* Sessions, 1826, for a re-review, which was held under advisement, until *January* Sessions, 1827, when the court appointed re-reviewers, who reported to *April* Sessions, that the road was unnecessary. This was read and confirmed *nisi*, and at *August* Sessions, 1827, confirmed.

The only error assigned was, that the court erred in granting a re-review, after the two first sets of viewers had reported in favour of a road.

By the act for laying out, making, and keeping in repair the roads and highways, &c. passed the 6th of *April*, 1802, it is directed, that the Courts of Quarter Sessions in the several counties of this commonwealth, on being petitioned to grant a view for a public or private road, shall have power, and by virtue of this act are directed and required, as often as they find it needful, in open court to appoint six discreet and reputable freeholders of the inhabitants near where the road is wanted. It proceeds to prescribe directions for these viewers, who are to make a report to the next Court of Quarter Sessions, and if then and there the justices of the said court *shall approve of the same,* it shall, at the next court after that to which the report is made, be entered on record, and thenceforth shall be taken, deemed, and allowed, to be a lawful public or private road, as the case may be. The court shall direct of what breadth the road shall be opened, which shall not in any case exceed fifty feet.

The 22d section authorizes and requires the appointment of a review, on application made for that purpose, at the expense of the petitioners, provided such application be made at the next Court of Quarter Sessions, after report has been made on the first view.

(Case of a Road from the West End of Pomfret Street, Carlisle.)

There is no provision in this, or any other act of assembly, expressly on the subject of a re-review; but, it has long been the custom, to grant a re-review under a former act of assembly, containing, as to this matter, the same provisions as that now in force, 2 *Yeates*, 63, and, under this act, 2 *Binn.* 256. That, however, has been usually done where the viewers and reviewers have differed in their reports.

The law directing a review, supposes it possible, that six discreet and reputable freeholders may be mistaken, or it would not have directed the review. Although it is not probable, yet it is possible, that the six appointed to review may also, from prejudice, or passion, or some other cause, commit an error, or fall into a mistake.

It has happened, that a great ferment was excited on the subject of a short road, and one really of not much importance to the public, or any individual; and the legislature would seem to be aware of this, when they require the report to be approved by the court, to lie over for a term, a review to be then granted, if required; and, by the fair meaning, and settled construction, the decision of the court after this, before a road is legally established.

Some zeal was apparent in the discussion of this case; and something said, of the danger of permitting a court to decide contrary to the reports of two views. The same, and much more of such objection, is occasionally heard, to granting new trials; but the courts have a right, and when it is exercised, the community has no cause to complain, and does not complain. In the case before us, the power is expressly given; for I will not suppose, that the legislature meant that it must be approved, when they use the phrase, " *and if then and there the justices of the said court shall approve of the same.*" As the court could then have refused to approve of, or to confirm the first two reports, it was matter of discretion, whether they should inquire by another view, or act on what was before them; and it was no more the subject of a writ of error, than granting or refusing a new trial.

I have known several instances, of the court refusing to approve of the first report; and several of their refusing to approve, where viewers and reviewers have concurred, and no harm done. Something must be left to the sound discretion of every court. We have no means of deciding on the propriety of the exercise of that discretion, in most cases; at least not such information as would be called infallible. We think it best to leave it where the law has placed it; and feel confident courts will seldom refuse to approve of reports without good reasons.