[PHILADELPHIA, MARCH 30th, 1839.]

4wh339
149 293

### DAY *against* SHARP.

#### IN ERROR.

1. A., the defendant in an action of trespass justified under an execution issued by a magistrate in a suit brought by B. before him, and assigned to A. The plaintiff objected to the admission of the execution in evidence, and offered to prove that B. was dead before the issuing of it. The Court received evidence of the death of B. and decided that the execution was not admissible under the circumstances. *Held*, that it was error, thus to take the question of the fact of death from the jury.

2. An execution issued in the name of a plaintiff, who is dead, and without a *scire facias* to substitute his representatives, is not absolutely void, and the party may justify under it.

3. Where a judgment was obtained against a principal and surety, and the latter paid the amount to the plaintiff, who afterwards died, and then the surety issued an execution in the name of the deceased plaintiff, under which the goods of the principal were taken, it was held that the surety might justify in an action of trespass, under this execution.

ERROR to the Court of Common Pleas of Wayne County, to remove the record of an action of trespass *de bonis asportatis*, brought by John Sharp against Wareham Day.

The plea, was "not guilty," "with leave to justify."

On the trial before SCOTT, President, on the 22d of August, 1837, the plaintiff proved the taking of the goods. The defendant then gave in evidence, a transcript from the docket of a justice of the peace, of an action by Myron Gaylord, against John Sharp, Wareham Day and Charles Stanton, on a promissory note, dated December 1st, 1826, drawn by the defendants, in favour of the plaintiff, for $87 40; in which suit judgment was entered on the 31st of July, 1827. On the 29th May, 1828, an execution was issued, and on the 14th of June, 1828, an alias execution issued. On the 20th of February, 1830, the judgment was assigned to Wareham Day, and on the 10th of September, 1830, a *pluries* execution issued. The defendant also gave in evidence certain receipts signed by Myron Gaylord, showing the payment of the amount of the judgment to him by Wareham Day. The defendant then proposed to give in evidence a second *pluries* execution, issued on the 18th day of June, 1835, on the same judgment; to which the plaintiff's counsel

objected, on the ground that the plaintiff, Gaylord, was dead at the time of its issuing. The plaintiff's counsel offered evidence to prove the fact of Gaylord's death prior to that time, which was received by the Court; and on hearing the testimony, the Court refused to allow the said execution to be read in evidence; to which the defendant's counsel excepted. The defendant's counsel then again proposed to give this execution in evidence, and to show that it was issued at the instance and for the use of Wareham Day, who was surety for Sharp, the plaintiff, on the note, and that Day paid the amount of the judgment to Gaylord, before the assignment of the judgment to him by Gaylord, and before the issuing of the execution of June 18th, 1835. The Court however, refused to admit the evidence, and the defendant again excepted.

A verdict and judgment having been rendered for the plaintiff, a writ of error was taken; and the decision of the Court on the above point, was assigned for error.

Mr. *E. Wheeler* for the plaintiff in error, cited *Erb's Appeal* (2 *Penn. Rep.* 297.) *Hawk* v. *Geddes*, (16 *Serg. & Rawle*, 28.) *Theobald on Surety, &c.* 253. Act of 1834 sec. 26.

Mr. *Mallery, contra.*

The opinion of the Court was delivered by

SERGEANT, J.—In this case, the Court below fell into the error, which was censured by this Court in *Fisher* v. *Kean*, (1 *Watts*, 278,) and has been repeatedly the cause of the reversal of judgments. The defendant after proving a judgment before a magistrate against the plaintiff, and several successive executions thereon, offered in evidence a second *pluries* execution on the same judgment. The plaintiff objected to it, and offered evidence to prove the death of the plaintiff in the execution, which the Court permitted, notwithstanding the defendant's objection to it. The necessary effect of such a course on the part of the Court, is to withdraw from the jury, the decision of the facts, and to assume it by the Court alone, without their participation; whereas, in the present case, the *pluries* execution should have been received in evidence, as the process issued in the case; and when the counter evidence should have been given in its regular order, the fact in question would be for the jury to decide, and the questions of law arising thereon for the Court to instruct the jury upon. It is matter of regret to find a principle disregarded, which is so important to the due administration of justice, and has so often been the subject of notice by this Court.

The reason which has been given, would compel the Court to reverse this judgment, but as the case will go back again for trial, it is necessary to notice the second error assigned, presenting the points which would have arisen on the merits of the case, supposing the evidence offered had been regularly before the Court below.

(Day v. Sharp.)

After the Court had permitted the plaintiff to show the death of Gaylord, before the issuing of the second *pluries* execution, the defendant offered to show, that it was issued at the instance, and for the use of Day, one of the defendants in the judgment, proposing further to prove, that Day stood in the relation of surety to Sharp, and that Day paid the judgment at or before the assignment of the judgment to him by Gaylord, and before the issuing of the execution. The plaintiff met this offer by objecting: 1. That Gaylord was dead prior to the issuing of the execution. 2. That the judgment was previously satisfied. 3. That it should have appeared on the record before the issuing of the execution, that Day was surety as set forth in the offer. On these objections, the Court rejected the *pluries* execution offered by the defendant.

This was an action of trespass *de bonis asportatis*, in which the defendant justified under a judgment and execution at the suit of Gaylord against Sharp, (the plaintiff,) Day, (the defendant,) and Stanton. He proved the judgment duly rendered before the justice on the 31st July, 1827, execution issued by the plaintiff thereon, on the 29th May, 1828, an *alias* execution, June 14th, 1828, and a *pluries*, September 10th, 1830. Another *pluries* was issued on the 10th June, 1835, previous to which the plaintiff Gaylord was dead; and the question is, whether an execution issued and levied in the name of a plaintiff, who is dead, without issuing a *scire facias*, and under the other circumstances stated, is a justification to the party who issued it.

A distinction has long existed between process, which is absolutely null and void, and affords no justification whatever to the party issuing it, in an action of trespass, and process which is voidable merely. When the process is altogether irregular and defective, it is considered as null and void; and if it be vacated or set aside by the Court, the party who acted under it, becomes a trespasser from the beginning, though the officer may be justified by the command of the writ; not being bound to look into it. Even there, however, before the party can be sued in trespass, the process must first be set aside or vacated; for if it still subsist in full force and vigour at the time of the action brought, the party may justify under it. Where, however, the process is not totally defective and irregular, but merely erroneous, and liable to be reversed on error, it is not void, but voidable, and does not make the party issuing it, a trespasser. In the case of a plaintiff's death, no doubt it is the duty of the party who issues process of execution, to substitute the names of his executors or administrators; and as there is a new party, to issue a *scire facias*. But the not issuing of a *scire facias* where the law requires it, has not *per se*, been considered as making an execution void, or the party issuing it a trespasser. In *Jackson* v. *Bartlett*, (8 *Johns.* 361,) it was held, that if an execution issues after a year and a day, without a revival of the judgment by a *scire facias*, it is

(Day *v.* Sharp.)

only voidable at the instance of the party, and not void. So in *Patrick* v. *Johnson,* (3 *Lev.* 404, cited 4 *Watts,* 373,) a *fieri facias* sued out after a year and a day from the judgment, is not void, but merely voidable by writ of error. In *Howard* v. *Pitt,* (1 *Salk.* 261,) the plaintiff sued out a *ca. sa.* from the King's Bench, while the record of the judgment was removed from thence to the Exchequer Chamber, where it was abated by the death of one of the plaintiffs in error, but no *remittitur* was entered, and therefore the writ of error was still pending there—held to be erroneous, but not void, and the case in 4 *Leon.* 197, to the contrary was denied. In *Jeans* v. *Wilkins,* (1 Ves. 195,) after the body of the defendant had been taken in execution, the plaintiff issued a *fieri facias,* and sold a leasehold of the defendant: Lord HARDWICK said, that by law, during the existence of the *capias,* and the person in custody, a *fieri facias* ought not to be taken out, and the Court would set it aside on motion; but yet the *fi. fa.* was not void. The line of distinction has not been accurately drawn, as to all the cases where the process is merely erroneous, and those where it is an absolute nullity; and perhaps each case must depend, in some measure, on its own circumstances : but as the issuing of the execution, if done by a party entitled to collect the money upon it, is rather a defect in the formal mode of proceeding, that is to say, a use of the name of a deceased plaintiff, instead of substituting executors or administrators, and issuing a *scire facias,* than a substantial defect, it seems to me on the authorities, that it must in such case be considered as an erroneous proceeding, not an irregular and void one. If, however, the plaintiff had no right to issue the execution, if being a mere stranger, he interposed and set the constable on to do execution, against one no longer liable, it would be otherwise, (3 *Wils.* 376.) But even then, it would be necessary for the party grieved to have the execution first set aside or vacated by a direct proceeding; and then he might have restitution of the money, or recover his damages in trespass, but he cannot question it collaterally, while the judgment and execution are in full force. In the case before us, so far as appears, nothing of that kind was done. The writ remained in full force and virtue, at the time this action was brought, and the plaintiff acquiesced in it; and, therefore, whether it was duly issued by the defendant as surety or not, whether it was merely erroneous or absolutely void, in the legal sense of those terms, it was a justification for him in this action, as well as for the officer, or other person assisting in the execution of it.

In the case of *Prigg* v. *Adams,* (*Carth.* 274, *Salk.* 674, S. C.), in an action of false imprisonment, the defendant pleaded a judgment in the town Court, in Bristol, obtained against Prigg, and that he was arrested and imprisoned by virtue of an execution thereon, &c. The plaintiff replied, and set forth a private act of parliament lately made, by which a Court of Conscience was erected in that city to

(Day v. Sharp.)

have the sole conusance in the several actions therein expressed, concerning all matters under forty shillings, to be brought against any poor inhabitant of that city, and that all judgments elsewhere for such matters, should be merely void, and that he was a poor inhabitant, &c.; after argument, it was resolved by the Court, that this judgment was not absolutely void, and the officers (who served the execution) trespassers; and that the regular way to take the benefit of the act, was, for the defendant below to have pleaded this matter, and so to have entitled himself to such benefit: that since the judgment was not absolutely void, and though Prigg had neglected to plead the statute to the jurisdiction of the Court below, yet he was not without remedy, for he might come in upon the return of the *ca. sa.* in custody below, and then plead the statute, with the necessary averments in discharge of the execution. As upon the statute of additions, (1 *H.* 5, c. 5,) which hath the same words, viz. that the outlawry shall be void if there is no addition, yet in that case it has been always held, that the person so outlawed must either reverse it, or plead it, *ut supra;* and *Turner's case,* (2 *Sid.* 125; *Ray.* 73, 74,) was cited and allowed for law. For an irregular judgment is no judgment, and that was vacated before the action brought, so that the plaintiff might have replied *nul tiel* record to the defendant's pleading the judgment; and judgment was given for the defendant *quod quer. nil capiat,* &c. The same principles will be found recognised in the cases reported, 1 *Lev.* 95. 12 *Mod.* 178. 3 *Wils.* 142, 376. *T. Ray.* 73. 1 *Str.* 509. *T. Jones,* 215. *B. N. P.* 83. *Allison* v. *Rheam,* (3 *Serg. & Rawle,* 142.) *Berry* v. *Hamill,* (12 *Serg. & Rawle,* 210). In the two latter cases, it is to be observed, that the issuing of a *ca. sa.* without calling on the defendant to show whether he had property, was expressly prohibited by act of Assembly, and in *Allison* v. *Rheam,* the writ had been previously set aside by the Court from which it issued, and I infer, from the opinion of Judge DUNCAN, that it was the same in *Berry* v. *Hamill.*

Judgment reversed and a *venire facias de novo* awarded.