## Speer *against* Sample.

An execution issued upon a judgment after the death of the defendant, is not absolutely void, but only voidable; and a sale of land upon such execution vests in the purchaser a good title.

WRIT of error to the district court of *Alleghany* county.

This was an action of ejectment for a tract of land, by the heirs of David Sample against Thomas Speer. David Sample died seised of the land, and after his death a *fieri facias* was issued upon a judgment against him in his lifetime, at the suit of John M'Donald, upon which the land was levied and sold to the said John M'Donald under whom the defendant claimed. The only question in the cause was whether the execution was void, and a sale upon it conferred no title? The court decided that it was void and directed the jury to find a verdict for the plaintiffs; which was assigned for error.

*Forward*, for plaintiff in error, cited, Jackson *v.* Robins, 15 *Johns.* 169; Jackson *v.* Robins, 16 *Johns.* 572; Bailey *v.* Wagoner, 17 *Serg. & Rawle* 327.

*Fetterman*, for defendant in error, cited, 1 *Cowen* 711; 5 *Ohio Rep.* 221; Commonwealth *v.* Miller, 8 *Serg. & Rawle* 456; Righter *v.* Rittenhouse, 3 *Rawle* 279; 1 *Salk.* 319; 1 *Watts* 411; Commonwealth *v.* Mateer, 16 *Serg. & Rawle* 419; 10 *Wend.* 206; 3 *Wils.* 345; 2 *Penns. Prac.* 327; *Yelv.* 279; Samms *v.* Alexander, 3 *Yeates* 268; 2 *Caines's Rep.* 61.

The opinion of the Court was delivered by

KENNEDY, J.—The only question presented here is, whether a sale of land of which the owner died seised, under an execution sued out after his death, upon a judgment obtained against him in his lifetime, which became and continued to be a lien on the land from its date, be good and valid or not. The determination of this question will depend upon the correct solution of another, whether the execution was absolutely void or not. If it was good, or only erroneous and voidable merely, the sale passed the title to the land; but if absolutely void, then it is plain that no right or title could pass by it. His honour the judge of the district court considered it void, and that the purchaser under it at the sheriff's sale therefore acquired no title to the land; and this being the case, the plaintiffs below, the heirs of the defendant in the execution, were entitled to recover.

The judgment of the district court is certainly not without respectable authority, both in England and some of our sister states, to sustain it; but still we think that the case is not to be decided altogether upon such authority, but rather upon the reason and general analogy of the common law, and a modification of it to suit, in some degree, our statutory provisions for taking lands in execution and selling them for the payment of the debts of their respective owners, which has been adopted and established by our practice in this respect, and has obtained probably ever since the passage of the first statute on the subject, considerably above a century ago.

It will be proper, however, in the first place to notice the effect of a judgment upon the real estate of a defendant; his situation after judgment rendered against him; and the right of the plaintiff to have execution of it.

By the common law a judgment bound the lands of the defendant, so that the plaintiff was entitled to have execution against all that the defendant held at or subsequent to the giving of the judgment: and upon an execution sued out against him, they were liable to be seized and taken, even from those who had, during the interim, become *bona fide* purchasers of them for a valuable consideration. 4 *Com. Dig., tit. Execution, D, b,* and the authorities there cited, which establish this proposition fully. This principle of the common law has been adopted and prevails in this state, so far as to bind the lands held by the defendant within the county where the judgment is obtained from the time of its date, and to enable the plaintiff to have execution of them in the hands of *bona fide* subse-

[Speer v. Sample.]

quent purchasers. So by the common law a *fieri facias* sued out upon a judgment bound the goods of the defendant from its *teste*, and gave the plaintiff a right to have them taken in execution to satisfy his judgment, though the defendant had sold and delivered them to a *bona fide* purchaser for a full price, or had died after the *teste*, and before the actual issuing of the writ. And this was done upon the principle of the executions being a *lien upon the goods* from its *teste*, though not actually sued out until weeks or even months afterwards, which gave the plaintiff, by the sheriff under the writ, a right to have them seised in the hands of the purchaser or of the executors or administrators of the defendant, without suing out a *scire facias* to make them parties to the judgment or the execution upon it. *Gilb. on Ex.* 13; Fleetwood's case, 8 *Co. Litt.* 171; Audley *v.* Halsey, *Cro. Car.* 149; Boucher *v.* Wiseman, *Cro. Eliz.* 440; Anonymous, *Ibid.* 174; Bailey *v.* Bunning, 1 *Lev.* 173, 174; S. C., *Sid.* 271; Harwood *v.* Phillips, *O. Bridg.* 468; Parkes *v.* Mosse, *Cro. Eliz.* 181; Pennoyer *v.* Brace, 1 *Lord Raym.* 245.; S. C., *Salk.* 319; Odes *v.* Woodward, 2 *Lord Raym.* 850, 3 *P. Wms* 399. And so it was held even after the passage of 29 *Car.* 2, *c.* 3; Houghton *v.* Rugley, 2 *Show. K. B.* 485, *ca.* 441; S. C., *Skin.* 257; *Comb.* 53.

It seems then, from these authorities, to be a rule perfectly well settled in respect to the taking of goods in execution, that whenever the *fieri facias* operates as a *lien* upon them, they may be seized under it in the hands of whomsoever they shall be found. And accordingly, in Harwood *v.* Phillips, Chief Justice Bridgman lays it down in the following terms: "the law is clear that after the *teste* of a *fieri facias* an alteration of goods or chattels *bona fide* shall not hinder the execution: so is sir Gerard Fleetwood's case; and the books there cited are, 3 *Cr.* 174: for by the award of execution the goods are *bound*, so that they may be taken in execution into whose hands soever they come. The reason is the same in case of *death* as where the defendant *aliens bona fide*; for at the *time* of execution *made* they were the *alienees* in one case, and the *executors* in the other; but the goods being *bound* by the execution awarded, no alteration subsequent in respect to the defendant shall alter the case. And the authorities are in point, that a *fieri facias* may be executed after the defendant's death."

Now lands being liable by statute here to be taken in execution and sold for the debts of their respective owners as goods and chattels, and as it is the judgment and not the award of execution that creates the *lien* on the lands of the debtor, it would seem to follow by a parity of reasoning, that they might be taken in execution and sold after the death of the defendant to satisfy a judgment that was a lien upon them *before* and *at* the time of his death. And indeed in the case of land aliened by the defendant after the judgment has become a lien on it, the plaintiff in England may follow it in the hands of the alienee and take it in execution during the life of the

[Speer v. Sample.]

defendant, provided he has kept his right to sue forth execution alive by having sued out one within a year and a day after it first accrued, without a previous *scire facias* to make the alienee a party to the proceeding.   And this is authorized and sanctioned by the principle that the land is bound by the judgment in the same manner as the goods are by the award of execution.   30 *Edw.* 3, 34; *Com. Dig., tit. Execution, D*, 1.   It is also every day's practice to do the same here, and to sell it for the purpose of raising money to pay the debt or amount of the judgment, unless the rents, issues and profits of the land beyond reprizes are found sufficient to pay the debt within the term of seven years.   To this I am unable to perceive any insuperable objection founded either in reason or art ; for the defendant after judgment given against him has no day in court, and therefore can set up no plea to prevent the execution of it.   Payment of the money is the only means by which he can compel a release of himself or the land from the operation and effect of the judgment ; and why should his alienee be placed in a different or better situation as to the land.   The judgment being on record and open to his inspection, he must be presumed to have had full knowledge of its existence and the liability of the land to be taken in execution for its satisfaction, and that in making the purchase, he was willing to encounter all the risk attending it.   Were it otherwise, the defendant might have it in his power to hinder and delay the plaintiff very unreasonably in his execution by disposing of the land ; and this delay might possibly be increased by the defendant's vendee repeating the same operation, &c.   It is true, however, that it is laid down as a general rule in Pennoir *v.* Brace, 1 *Salk.* 319, 320, that " when any new person is either to be better or worse by the execution, there must be a *scire facias,* because he is a stranger, to make him a party to the judgment, as in case of executor and administrator.   But it certainly never has been held that the alienee of the defendant has a right to claim the benefit of this rule on common law principles during the life of the defendant, where the plaintiff has sued out an execution within a year and a day, and continued it down.   And we have seen, by the cases before referred to, that it is not applicable either to the case of executors or administrators, wherever the lien of the execution has commenced on the goods before the defendant's death : and that in order to sustain the execution upon this principle, and to create a lien under it, commencing in the lifetime of the defendant, on the goods in the hands of the executors or administrators, the *teste* of the writ, when it reached to the life of the defendant, has been laid hold of and considered the true time of its being sued out, though in fact it was not issued and in being until after his death.   But executions being the life as well as the end of the law, this not only shows how much they are favoured by it, but likewise proves, in some cases at least, that where the plaintiff has obtained a judgment for his debt, and acquired a lien for the payment of it on

[Speer v. Sample.]

the property of the defendant, he ought not to be delayed or hindered in receiving it, because the property has changed hands or owners by death or otherwise. And although, in accordance with this principle, it has never been deemed indispensably requisite to sue out a *scire facias* to warn the alienee of the defendant during the life of the latter, before the plaintiff shall take the land bound by the judgment in execution from the alienee, yet it must be admitted that the rule of practice has been otherwise after the defendant's death. But why the death of the defendant should make that so indispensably necessary which was not so immediately before, as to render the execution absolutely void without it, is not, I think, very perceptible. And in my humble opinion the reason given in the books for requiring a *scire facias* to be sued out before execution in such case shall be issued, goes to prove that an execution sued out without a previous *scire facias* is not absolutely void, but voidable merely.

The reason assigned is, that the terre tenant *may* be able to show payment of the judgment or a release of the execution. But surely the existence of such a plea is not more likely to arise or grow out of the death of the defendant, than from his life had he continued to live. It has also been the practice in England to apply this rule to the case of the heirs and devisees of the defendant, and to give them the benefit of it. But in this state it has not been usual to extend it to either; nor indeed to terre tenants of any description. More has never been required after the death of the defendant, until lately that the rule has been changed by statute, than to sue out a *scire facias* to make the executors or administrators alone of the defendant a party to the judgment; which in most cases is not of any essential benefit to either the heirs or terre tenants, though it necessarily tends to retard the plaintiff in the receipt of a debt justly due to him according to the sentence of the law. In arguing thus, however, I do not wish to be understood as contending that the rule of practice in this respect, as it prevails either in England or this state, is without any advantage to recommend it, or so exceptionable in its operation as to render it necessary, or even proper, to disregard and to set it aside altogether; for I admit that cases may occur occasionally, though comparatively but seldom, where it may afford an opportunity of preventing injustice being done, by execution of the judgment, to those concerned in the ownership of the lands bound by it. But I merely wish to show that the rule is not of such vital importance to the due administration of justice generally, nor founded on sufficient reason, nor in such perfect harmony with the rule of practice in analogous cases, as to render the execution of a judgment after the death of the defendant, upon lands bound by it absolutely void. And with the same view I would further observe, that as the defendant after judgment has no day in court, and can therefore plead nothing to prevent the execution of it, his continuance in life does not seem to be indispensably necessary to prevent injustice being done by it. The relative rights of the parties to the judgment are

ascertained and irrevocably established by it, and its execution can as well be made on the property bound by it after the death of the defendant as before. Those succeeding to the ownership of the property upon his death are privies to the judgment, and presumed to have full knowledge of it, and have the same means, by law, of arresting and preventing either a fraudulent or irregular execution of it; that the defendant himself would have been entitled to had he lived ; so that if the plaintiff, after being paid the judgment by the defendant or his representatives or having released his right to the execution of it, shall sue out execution thereon, the owners of the property may have relief by *audita querela,* motion to the court whence the execution has issued, or by writ of error, as the nature of the case may seem to require. Thus terre tenants, heirs and devisees of the land are placed, it may be said, on the same footing with the defendant himself had he been living ; and having derived their title to the land from him with a full knowledge of the judgment, I think it cannot well be said that there is any thing particularly hard or severe in their case, since they have had all the favour extended to them that the defendant himself could have claimed had he been in being. Besides, it must not be forgotten that suing out a *fieri facias* or a *levari facias* to carry into effect the judgment of the court, is a proceeding exclusively *in rem,* and therefore furnishes an additional reason why the existence of the defendant at the time, or that of any other, as a party to the judgment, ought not to be considered so indispensably necessary, as that without it the writ shall be of no force whatever and the proceeding under it held absolutely void. Why should it be so, when according to the legal sense, as well as the common sense of mankind, the existence of a judgment upon record appearing in nowise satisfied seems to be a sufficient warrant for issuing an execution in conformity to it ; and if so, such execution when issued and placed in the hands of the sheriff to whom it is directed, must be considered a sufficient authority to justify him in seizing upon any property bound either by the judgment or the execution ? With what propriety, or upon what ground, I would then ask, can such an execution, or the seizure of such property under it, be pronounced absolutely void ? If there be any sufficient reason to require and justify such a sentence, I am unable to discover it. If the execution be absolutely void, the sheriff and all concerned in executing it must be considered trespassers, as it appears to me ; for if they are not, it must necessarily be because the writ of execution is of some force at least, and however small that may be, it is sufficient to prevent it from being pronounced void, though it may be voidable. To hold it to be void on account of a circumstance perhaps unknown to the sheriff, and which he may be unable to get a knowledge of, when it appears from the face of the record upon which it is founded to be perfectly regular, would be placing the sheriff in an awfully perilous situation. Besides, the execution of a judgment, being the life as well as the end of the law, is to be favoured, and ought not therefore to be ad-

[Speer v. Sample.]

judged void for slight irregularities, which can but seldom affect the justice of the case. In the case before us the record of the proceeding shows no irregularity whatever. The validity of the judgment is not questioned : the *fieri facias* is in exact conformity to it, and therefore warranted by it. Under this writ the sheriff was authorized to seize and take in execution any land bound by the judgment, which had been the property of the defendant. The land in question being of that description, the sheriff was justified in levying upon it as he did ; and afterwards in selling it under the writ of *venditioni exponas.* The death of the defendant in the *fieri facias* anterior to suing it out, which is the only objection made to it and the sale of the land by the sheriff, is one *dehors* the record, and therefore may be deemed of less weight than if it had been that it was sued out more than a year and a day after the plaintiff was first entitled to it; because this objection, had it existed, would have appeared on the record, so that every one might have been apprized of it; and doubtless, where it does exist, would generally be a fatal objection to *suing out the execution* if made in due time and form, or in a proper course of proceeding, though not sufficient to set aside a sale of property under it. The rule of practice requires that a previous *scire facias* shall be sued out on the judgment in this latter case, as well as in the case of the death of the defendant. The reason given for it, too, is nearly the same as in the case of the defendant's death ; perhaps a little more strong in its terms against the regularity of suing out a *fieri facias* without a previous *scire facias* in the first than in the second. The reason assigned in the second case is, that the representatives of the deceased defendant *may* be able to show a payment of the judgment or a release of the execution of it; *Bac. Abr. tit., Scire Facias,* 108 ; 2 *Saund.* 72, *p. in note* ; and in the first, that payment or a release is *presumed,* otherwise the plaintiff would have proceeded earlier to have execution of his judgment. Sympson *v.* Gray, *Barn.* 197 ; 2 *Saund.* 72, *d, in note.* Seeing then that the reason for requiring a previous *scire facias* to be sued out in the first case is the same as in the second, if not stronger ; the natural, and indeed the inevitable conclusion would seem to be, that a *fieri facias* sued out without such *scire facias* ought to be of as much force, at least, in the one case as in the other. But it has been held, and seems to be perfectly well settled now, that a *fieri facias* sued out after a year and a day have elapsed from the rendition of the judgment, is not void but merely voidable by writ of error ; Patrick *v.* Johnson, 3 *Lev.* 404 ; Howard *v.* Pitt, 1 *Salk.* 261, in which Russel's case, 4 *Leon.* 197, to the contrary, is denied ; 2 *Saund.* 6, *note* 1 ; and therefore ought not to be considered void in the case of death.

Now although it has ever been held erroneous in England to issue execution after the death of the defendant, without a previous *scire facias,* as it has also been after the lapse of a year and a day, except it bear *teste* in his lifetime; or be in certain cases regulated by statute, as upon a statute merchant or a recognizance in the nature of a statute

staple, yet I am not aware of any case in which it has been ruled to be void, and but two or three instances in which it has been said to be so.   The first that may be so construed is in *Fitz. N. B.* 267, a book of high authority certainly.   It is said there, "if a man be bounden in a recognizance, &c., although that the recognizee dieth, yet his executors cannot sue forth an *elegit* to have execution of the recognizance within the year after the day of payment, without suing forth a *scire facias* against the recognizor, &c. ; but against the heirs of the recognizor or the terre tenants, the recognizee or his executors ought to sue forth a *scire facias*, &c. otherwise if they be ousted, &c. by such execution of their lands, they shall have an assize of novel disseisin," &c.   If the meaning of Fitzherbert be, that the party may maintain his assize of novel disseisin for the recovery of the lands without first obtaining a reversal of the execution by writ of error, and this appears to be the natural import of the passage, then it implies that the execution in such case is void, for otherwise it could not be questioned in a collateral suit, such as the assize of novel disseisin.   Chief Justice Bridgman, in Harwood *v.* Phillips, *O. Bridgman's Rep.* 473, has put this construction upon it and seems to accord with it ; but held in that case that a writ of *elegit* executed upon the lands of a defendant after his death which bore *teste* in his lifetime, *was good.* In Thoroughgood's case, *Noy* 73, where A having a judgment in debt and execution against B, who died, and the sheriff levied the money upon the executors of B, it was held by the court to be "nought :" the editor of *Dyer's Reports* 76, *b,* in giving a statement of this case in a marginal note, substitutes the term "void" for " nought :" which I think is unwarranted : for generally the term " nought," when used as an adjective, means that the thing to which it relates is bad or not good ; and when applied to a legal proceeding, more frequently, perhaps, means that it is erroneous or voidable, and therefore cannot be sustained, than that it is absolutely void.   As it does not appear, however, from the report of *Noy,* whether the question came up upon a writ of error, *audita querela,* motion to the court from which the execution issued, or in a collateral suit, it may not be possible to ascertain with certainty whether the court considered the execution void or only voidable.   But be this as it may, the decision of the case has long since been overruled by the cases already cited, showing that the goods ·of a defendant may be levied on in the hands or possession of his executor after his death, by virtue of an execution awarded against him in his lifetime.

These are the only English authorities that I have met with on this subject, which can, by any fair construction, be looked on as going to show that the execution is void.   The last, however, resting on the decision in Thoroughgood's case, even if it were sustained by it, is entitled to no weight, as the case itself does not seem to have been followed in subsequent decisions; and Chief Justice Bridgman seems to found his opinion entirely upon the authority of Fitzherbert, and offers no reasons in support of it.   Nor am I able to discover that any case has

[Speer v. Sample.]

ever been decided in conformity to it in England ; and as it appears to be at variance in some degree with the analogy of the law on this subject, as well as with the rule laid down in cases involving substantially the same principle, I am inclined to believe that it would not be deemed the law there of the present day. But even if it were, the heirs and terre tenants of lands in England stand in a situation somewhat different, in regard to judgments binding their lands, from that which they hold in this state ; which may be one reason, among others, why a *scire facias* has not been held necessary to be sued out and served upon them before taking their lands in execution to satisfy such judgments. There each tenant or heir is entitled to have all the lands bound by a judgment extended and charged equally with the payment of it ; so that he, where there are several, shall bear no more than his equal proportion of the charge. Michel *v.* Croft, *Cro. Jac.* 506 ; Clerk *v.* Hardwicke, *Moore* 525; Jefferson *v.* Morton, 2 *Saund.* 6, *and note* 10, *p.* 8; Sir William Herbert's case, 3 *Co.* 14 *a,* 14 *b,* 15 *a.* But here the plaintiff in the judgment has a right to select and take in execution any distinct portion of the lands bound by it that he pleases; and one of several heirs or tenants whose land is taken to satisfy the judgment, if he has a right to contribution, must look directly to his co-heirs or the other tenants. It may also be added, that as by the law of this state the lands of deceased debtors always become bound, immediately upon their dying, for the payment of all their debts, it could not have been carried into effect, nor the payment of the debts of the ancestors of non resident heirs to lands lying within the state have been enforced against such lands, had it been held necessary to sue the heirs or to make them parties to judgments, for the debts of their ancestors. Having no court of chancery here, the only mode by which it was thought this could be effected in their absence in such case, was to get up an administrator, against whom the creditors might institute suits, and upon their obtaining judgments against him sue out execution against the lands, and sell them as in other cases. This course was adopted, and has frequently been pursued. We have also reason to believe that the practice of suing out executions against deceased defendants, upon judgments obtained against them when in full life for the payment of money, and in virtue thereof levying upon and selling their real estates for it, has prevailed to some extent in various parts of the state ; and that many titles to lands hitherto considered good by those holding under them would be set aside by declaring such executions absolutely void. It would be ruinous to many who have not only paid a full price for the lands, but confiding in the validity of the sheriff's sales, have made valuable improvements upon them. And why should this be in the case of an execution issued after the defendant's death, and not so in the case of an execution sued out after the lapse of a year and a day, when the reason for requiring a previous *scire facias* to make the proceeding regular, is the same in each case? I am inclined to believe that the reason

[Speer v. Sample.]

and the analogy of the law do not make the execution void in the first case more than in the second; and that equity is opposed to its being so declared. For it would, in effect, be permitting heirs and terre tenants to recover and hold the lands, not only without paying for the improvements made by the purchasers under the executions, but likewise discharged from the payment of the debts of their ancestors, testators or alienors, to which they were justly liable both in law and in equity. This, it seems to me, would be inequitable as well as unjust. I am aware that cases of hardship may occasionally arise, taking this to be the law on the subject, in which the interests of heirs and terre tenants may suffer for want of positive and direct notice being given to them of the intention of plaintiffs in judgments to proceed by execution against the lands bound by them to enforce payment; but it is impossible to guard effectually against such occurrences without doing perhaps great injustice to the plaintiffs by hindering and delaying them in the execution of their judgments. Indeed great injury as well as injustice may be done on some occasions to the defendants themselves by taking their lands in execution and selling them while they are in full life. I apprehend, however, that such cases seldom or never happen without some default or want of vigilance on the part of the sufferers. But at all events they cannot be such as to counterbalance the evils and injury that would be likely to result from holding sheriff's sales to be absolutely void under such circumstances. For it is obvious that the more strict the rule is made for testing the validity of judicial sales of land, the more unwilling will men be to buy at them, and the end of the law will be measurably defeated by preventing creditors from having execution of their judgments, and from being paid moneys justly due to them. But this is not all; for the unfortunate defendants or debtors themselves would be greatly injured by it in having their estates often sold for prices but little more than nominal. Now it being clear that the rule which is best suited to subserve the ends of justice, and at the same time to promote the interests of all those most generally concerned in the matter, ought to be preferred, it would seem to follow that the execution in this case ought not to be considered void, but merely voidable at most, and the sale in pursuance of it good. This court, with a view to encourage competition at judicial sales, in order that the full value of lands so sold may be had if possible, has uniformly, in deciding on their validity, endeavoured to sustain them, when made under the judgments or decrees of courts possessing general jurisdiction on the subject, and after being fairly carried into execution. And this, it appears to me, is in conformity to, if not required by, the letter and spirit of the act of assembly of 1705, which declares that sales of lands made under executions sued out on erroneous judgments afterwards reversed, shall not be avoided.

Thus, after a careful and deliberate examination of the question

presented in this case, we are satisfied that the execution at most was only voidable, and not void; and that the sale made under it must, therefore, be considered valid.

Judgment reversed.