## Evans *versus* Meylert.

1. A married woman, being seised in her own right in fee of certain real estate, not however her separate estate, joined with her husband in executing a mortgage thereon for a debt of the husband, which mortgage was in due time recorded. A *scire facias* was issued thereon against the husband and wife, and, at the request of the husband alone, an attorney appeared generally and waived service of writ, and afterwards confessed judgment as "att'y for def't." A few days afterwards the wife died. A few months afterwards, a *præcipe* was prepared for a *scire facias* against the husband individually and as administrator of the estate of his wife, to which, by a writing signed with his own name, he appeared and waived service of writ, and some months afterwards agreed in writing to confess judgment in the case. Afterwards, by *levari facias* on such judgment, the land was sold. Above twelve years afterwards an ejectment was brought in the name of the minor heir of the wife against persons claiming under the purchaser at the sheriff's sale':

It was *held*, that the original judgment was not void, and, independent of the revival, was sufficient to pass a valid title to the purchaser at the sheriff's sale, and an irregularity in the revival was not material.

2. Where there is an appearance *by attorney* for persons competent so to appear, and judgment is entered by confession or otherwise, third persons who purchase property on the faith of such judgment are not to be affected by a want of authority *in the attorney*. After rights have vested under a judgment so obtained, the only remedy is by action against the attorney by the party for whom the attorney appeared. The judgment cannot be impeached in a collateral proceeding.

3. In a *scire facias* against husband and wife on a mortgage, for a debt of the husband, of real estate held in right of the wife, not being *her separate estate*, the husband may appoint an attorney for both.

4. The point of time to which to look to ascertain whether the estate of the wife was her *separate* estate, was not after the death of the husband, but it is the time when the proceeding on the mortgage took place.

5. It was not necessary that notice of the *scire facias* to revive the judgment on the mortgage be given to the heirs of the wife, as when it issued notice to the heirs of a decedent was not necessary.

6. The husband represented himself on the record as administrator of the estate of his wife; and, after a purchaser has acted on the faith of that representation, those who claim title to the administration under him cannot be allowed to allege that he was not the administrator. *He* would be estopped from proving such a negative, and they are bound by the estoppel which would affect him.

7. If however 'the heir of the wife had not either actual or constructive notice of the proceedings on the judgment on the mortgage, the only effect would be to give to her a right in the ejectment against the sheriff's vendee or one claiming under him, to make any objection to the proceeding which would have been allowable to her in the proceeding by *scire facias* to revive the judgment on the mortgage.

8. If the judgment were irregular, the grantee of the purchaser at the sheriff's sale, before dispossession by the heir of the wife, would have a right to be repaid the amount of money produced by the sheriff's sale which was applied to the payment of the mortgages of the husband and wife.

ERROR to the Common Pleas of *Butler county*.

This was an ejectment to September Term, 1848, by Sarah Frances Evans, by her next friend, Sarah Collins, *v.* Amos N.

Meylert, and others, for a tract of 417 acres 145 perches of land, adjoining the borough of Butler.

The plaintiff was the daughter of Valeria Evans, wife of Evan R. Evans, both of whom were deceased, and she claimed the land as heir-at-law of her mother.   The land was patented to Stephen Lowry, who by his will, proved 4th January, 1822, devised all his real estate in Pennsylvania to his daughter, Sarah Collins, who by her deed, dated 22d May, 1830, conveyed the land in dispute to her daughter, Valeria, the mother of the plaintiff in this suit.

The defendant claimed that the title of Valeria Evans had been divested by proceedings under a mortgage executed by Evan R. Evans and Valeria his wife.   This was disputed on the part of the plaintiff, it being alleged that such proceeding was illegal, and did not divest the title of the plaintiff.   The circumstances were as follows:

Valeria, afterwards wife of Evan R. Evans, was born on 11th March, 1808; she was married to Evan R. Evans on the 7th October, 1828, and died September 18th, 1833, leaving issue of her marriage two children, the present plaintiff and a son Stephen, an infant, who died about nine months after the death of his mother.

The defendants were in possession.   On their part was given in evidence a mortgage from Evan R. Evans and Valeria, his wife, *to George W. Cook*, dated October 30, 1831, acknowledged the same day, and recorded November 2d, 1831, by which the grantees mortgaged the land in dispute for the payment of $2163, the receipt for which, upon the mortgage, is signed by Evan R. Evans alone, and it was alleged that it was given to secure a debt of the husband.   The mortgage was acknowledged in proper form.

Upon this mortgage a *scire facias* issued on 28th August, 1833, to Sept. Term, 1833, against Evan R. Evans and Valeria his wife; and on that day an attorney of the Court, at the request of the husband alone, appeared and waived service of the writ, and also marked his name in the usual place upon the margin of the record, *without restriction*.

On the 11th September, 1833, by an agreement of the attorneys of that date, judgment was entered by the Prothonotary for $2405.33, with stay of execution till the following March Term. The paper filed was signed by the counsel, as "attorney for defendant."

On 18th Sept. 1833, Mrs. Evans died.   To June Term, 1834, a *scire facias* to revive the judgment issued against Evan R. Evans individually, and Evan R. Evans, administrator of the estate of Valeria Evans, deceased.   To this Evans appeared as follows: May 28, 1834, I appear and waive service of writ.   Signed, Evan R. Evans. An agreement, dated October 4th, was signed "*E. R. Evans*," and by the plaintiff's attorney, agreeing that judgment be entered in the case entitled against Evans individually, and as adminis-

trator of the estate of Valeria Evans, deceased; and on the 18th October, 1844, judgment was entered in that manner, for $2405.33, with interest from 11th Sept. 1833, the date of the original judgment.

A *levari facias* was issued to sell the mortgaged property, returnable to September Term, 1834, at which term Evan R. Evans appeared, and by petition, representing himself as the administrator of his wife, asked the Court to stay the proceedings upon the *levari* on account of the sacrifice of the property which would take place, until he should have an opportunity of applying to the Court for an order to sell.

Subsequent writs of *levari facias* were issued, and the property was finally sold on the 12th September, 1835, to Archibald McCall, for $4100. A deed was made by the sheriff to McCall, in pursuance of the sale, and acknowledged on the 18th Sept. 1835.

The defendants claim under McCall, who took possession of the premises.

On the part of the plaintiff, there was given in evidence a certificate of the register of Butler county, that he had examined the records of his office and papers therein, and was not able to find any evidence therein of the issuing of letters of administration to Evan R. Evans, or to any other person, upon the estate of Mrs. Valeria Evans.

The counsel who appeared was examined, and stated that he appeared in the case *at the request of Mr. Evans ;* that he had no conversation with Mrs. Evans on the subject, and had no authority from her in the matter.

Evidence was given of a declaration by Mrs. Evans as to compulsion by her husband as to the execution by her of the mortgage to Cook, the same consisting in a declaration by her made to her husband to that effect, which was overheard by the sheriff. It was offered, accompanied by an offer to prove that the declaration was communicated to McCall, the purchaser, and its truth admitted by him. The Court in the charge stated that no such admission by McCall was proved as was sufficient to be left to the jury.

The record of a mortgage on the land in dispute, by Evan R. Evans and wife to *Archibald McCall*, was given in evidence. It was dated 11th October, 1832; it was for $550, and was founded on the bond of Evan R. Evans.

Evans died in Texas, in July, 1836.

AGNEW, J., charged, " that the mortgage of Evans and wife to Cook was regular on its face, and the certificate of acknowledgment valid. That the *scire facias* against the husband and wife was regular. That a married woman, legally called on to answer a writ, as in this case, may appear by attorney. Appearance by attorney is a necessity often, and to her sex always fit and appropriate. If she can appear by attorney, she is not bound to incur the expense

of service, and may appear without it; and when the attorney in this case appeared for the defendants, they were both legally in Court and subject to its judgment. * * The instrument on which judgment was entered was entitled against both. The appearance of the attorney had been for both, and in the confession the attorney did not confine it to either; and if he meant one he did not designate which. Therefore the abbreviation 'deft.' often applied to the whole number as a party, should not be limited to one only. The jury were instructed that the confession and judgment were against both of the defendants."

He further charged, "that the original judgment being a valid one, and not reversed or set aside at the time of the issuing of the *scire facias*, the judgment on the *scire facias* was valid. Evans appeared as administrator; he was entitled to administer; he presented a petition to the Court, asking a stay of proceedings until he could apply to the Court for an order of sale, and in the petition he described himself *as administrator*. This was on 8th December, 1834." The Court charged, that after the lapse of eighteen years there was a strong presumption that he was administrator. He instructed the jury that McCall, and those claiming under him, were protected by the sale under the judgment, and that it could not be avoided in this collateral proceeding.

But he alleged that if it were proved that no letters to Evans had ever issued, and that he by his unauthorized act subjected the reversion of his wife's realty to the payment of his own debts, to the prejudice of her heir, he had doubts whether the heir cannot, in ejectment, impeach the title acquired under a judgment thus confessed. But under the evidence in the case, he instructed the jury that the sale to McCall under the judgment on the *scire facias* was valid, and could not be avoided in this suit. That the defendants, therefore, were entitled to a verdict upon the evidence.

Verdict was rendered for defendants.

Error was assigned to the charge.

The case was argued by *W. M'Candless*, for plaintiff in error. —It was contended, *inter alia*, that Mrs. Evans was entitled to service and to be heard, as all beyond the life of her husband was *her separate estate :* 2 *Roper on Husband and Wife* 268 ; 1 *Dan. Ch. Pr.* ch. 8, sec. 2 ; 2 *Vernon* 614 ; 1 *Hoff. Ch. Pr.* 106, 161 ; 1 *Pow. on Mort.* 167 ; 1 *Paige* 421 ; 2 *John. Ch.* 139 ; *Calvert on Parties in Eq.* 268 ; 20 *Wend.* 570.

2. Mrs. Evans did not appear. She had no power to employ counsel until the law forced her to appear, which would be only after *service* of process.

The attorney confessed judgment as "atty. for deft." In this there was nothing specifically binding on Mrs. Evans.

The law will presume nothing against her: 4 *Barr* 93, Rogers *v.* Smith. The mortgage debt was not her debt. The authority of an attorney to confess judgment can be derived only from the warrant of his principal, and a *feme covert* is not capable of executing a warrant for such a purpose. Reference was made to Caldwell *v.* Walters (see 6 *Harris* 79), as showing that the sheriff's vendee is not protected by a *void* judgment.

It was further contended that the heir was not bound to know that another is assuming without authority to act as the administrator of the estate of his or her parent; and if there was no administration in this case, there was a want of authority in the husband to bind the estate of his deceased wife by a confession of judgment of revival, and there was a want of jurisdiction in the Court. There can be no judgment without a party defendant, and Mrs. Evans was dead before the *sci. fa.* to revive the judgment issued: 9 *Peters' Con. Rep.* 392, Griffith *v.* Frazer; 1 *Gallison* 37.

*Graham, Purviance,* and *Loomis,* for the defendants.—The defendants claim under McCall, who went into possession soon after the sale. Valuable improvements have been since made on the property.

As it respects duress, the fact of duress should have been proved, and also that the purchaser had notice of it. The evidence offered of the declaration of Mrs. Evans, made two *years after* the execution of the mortgage to Cooke, and *not communicated* to McCall, was no evidence of either the one or the other. It was therefore properly rejected for that purpose.

The judgment on the *first scire facias* against Evan R. Evans and Valeria his wife, is a good and valid judgment against them both. The appearance of the counsel is general, and *not special.* It was, he "*appears and waives service.*" The writ is returned "service waived." And although, in the confession of the judgment, the counsel signs the paper, "Att'y. for def't.," in the singular number, yet the confession, not being limited to one of the defendants, must be taken to be as broad as the appearance. Every appearance that is not *specially limited* is general: Scott *v.* Israel, 2 *Binn.* 145. 1 *Binn.* 214, " summoned against two ; ' served' as to one and '*nihil habet*' as to the other ; afterwards an attorney entered an appearance without restriction, opposite the name of the defendants, on the docket ; it was held to be a good appearance for both."

The law having authorized a married woman to mortgage her estate, (Jameson *v.* Jameson, 3 *Whart.* 457,) must necessarily have given her the authority to engage the services of an attorney to appear in Court for her when the proceedings which the law provides are commenced against her, otherwise she would be in a worse

condition than a *feme sole*. She would have to appear *in person*, or not at all. But it is said a married woman cannot execute a warrant of attorney, and neither can she. " But if husband and wife are sued, the husband is to make an attorney for her :" 1 *Bacon, Ab.* 485, tit. " Attorney ;" 3 *Taunt.* 261; 6 *Modern* 86; 2 *Sand.* 213; *Bridg.* 73.

It is true, in levying a fine a feme sole must come into' Court *in person*, but there she is to be *examined* before the judges as to her consent. Here the examination is taken before the magistrate, and there is no necessity for her to come into Court *in person* on the *scire facias*. She may appear by attorney ; and though she may not be able to execute a *warrant* of attorney, because she cannot execute any deed (except on a separate examination before a magistrate), she and her husband can *employ* an attorney, or her husband may do so for her.

The next question raised by the record is as to the revival of this judgment.

In the first place it is to be observed, that if there was a good judgment against Mrs. Evans in her lifetime, it required no *revival* after her death—a sale on the judgment any time within *twenty* years after her death would have carried the title : 4 *Watts* 424, Fetterman *v.* Murphy. The objection to the revival, then, merely respects the *form of proceeding* against a decedent's estate, and the want of it would be a mere *irregularity*, Spear *v.* Sample, 4 *Watts* 367; 5 *Watts* 548 ; and does not raise any question of *power* to represent the estate. The judgment on the first *sci. fa.* was, that the mortgagee have execution of the mortgaged premises, and the *alias sci. fa.* was only necessary to make the administrator a party to the proceedings for the sake of *regularity*. A sale on the first judgment, without the *alias sci. fa.*, would have conferred a good title to the purchaser, though the defendant were *dead* before the issuing of process : 4 *Watts* 270, Warder *v.* Tainter.

However, the revival is good also in this proceeding without any evidence that Evan R. Evans was the administrator of his wife. In all actions against executors and administrators the plaintiff alleges in his declaration that the defendant is executor or administrator of some one deceased. If the defendant does not expressly deny this fact, but comes into Court and pleads over, it is an *admission of record* that he is such administrator or executor. Whatever is not *denied* in pleading is taken as admitted. Every *fact* necessary to the finding of a verdict is conclusively presumed to have been *proved* after judgment: 4 *Dallas* 104; 6 *W. & Ser.* 342; 1 *Saunders* 296, Stennel *v.* Hogg. The fact, of E. R. Evans being the administrator is doubly proved : 1st, by the highest kind of evidence of it, the admission of *record;* and, 2d by the presumption that *all facts* necessary to the rendition of

[Evans *v.* Meylert.]

such a judgment were *proved* to the Court before such judgmen⁺ was entered; and this admission and presumption are conclusive in *all collateral* proceedings.

Hence it is not required to go behind the judgment to ascertain whether an attorney at law, who confessed it, had *power* to do so; or whether the sheriff has *actually served* the process; or whether the cause of action was just; for "all things are presumed to be rightly done in a Court of record:" 5 *Watts* 173, McDonald *v.* Mulholland—the syllabus of which is as follows: "It is not a tenable objection to the admissibility in evidence of a judgment against an administrator, that his letters of administration had not been previously shown; the judgment cannot be thus *collaterally* impugned."

The fact that any one will undertake to represent an estate, as a party to a suit, without authority, is not very probable, as by doing so, he is liable to be sued as *executor de son tort ;* but if he do so, it is an error *in fact* in the judgment, as the fact that the defendant was *dead,* as in the case of Warder *v.* Tainter, 4 *Watts* 270. But the judgment is only reversible for that error of fact, and *not void.* Such a judgment would be reversible by writ of error, *coram vobis,* in England, and in this state by motion to the Court, as the writ of error *coram vobis* does not seem to be in force here: *Troub. & Haly's Prac.* 436; 1 *W. & Ser.* 441, Hurst *v.* Fisher: but, until reversed, it is, as to *third persons,* who cannot reverse it either for error in fact or law, a good judgment, and will support a sale, just as a judgment containing error in law will until it is reversed. The Act of 1705 sustains the title of the purchaser in either case: 4 *Watts* 286, Warder *v.* Tainter.

If a person, not authorized, has undertaken to appear as administrator of an estate, it is the duty of those to be affected by it to reverse it. If they do not do so, but let third persons purchase on the faith of it, they are in default, and must suffer by it if any loss ensues. As to notice of it, the record is notice to them.

Although an irregular judgment which has been put on the records of the Court *without authority,* may be reversed by writ of error, or set aside on motion in the Court where it has been entered, yet this can be done only at the instance of the defendant himself; a third party is entitled to interfere only when the judgment is *collusive :* 6 *Barr* 272, Drexel's Appeal; 5 *W. & Ser.* 473, Hauer's Appeal. In *no case* can a judgment of a Court of competent jurisdiction be treated as a nullity: 2 *Barr* 438, Withers *v.* Haine. It can be impeached *collaterally* only on the ground of fraud: 7 *Barr* 257, Dickerson's Ap.; 9 *Barr* 94, Watson *v.* Willard. Even a fraudulent judgment will support a sale until set aside, *unless the purchaser has notice of the fraud.*

This Court has gone great lengths to sustain the title of a pur-

[Evans *v.* Meylert.]

chaser at a sale made on a judgment: 4 *Watts* 424, Fetterman *v.* Murphy, a case in which the *record* showed the judgment had been *paid;* 5 *Watts* 548, Hays *v.* Shannon; Warder *v.* Tainter, before cited, which was a proceeding on a mortgage against a person who was *proved,* on the trial of an ejectment by the heirs against the purchaser, *to have been dead before the issuing of the sci. fa.* See also 4 *Watts* 367; 6 *Watts* 294 and 297; 7 *Watts* 86 and 331.

In this case, however, in addition to the fact that Evan R. Evans was by law *entitled* to the administration of his wife's estate, he presented a petition to the court, (which is part of the record,) as administrator of the estate of his wife, *verified by his affidavit,* which was sufficient in point of fact to overthrow the mere negative certificate of the register, that the records of his office did not *show* that he was the administrator.

*Shaler,* in reply.—He contended that the judgment of revival was wholly void. A judgment against an executor *de son tort,* will not warrant a sale. Is not a judgment against one assuming to act as administrator, but who was not such, as inefficacious as if the person, as whose representative he appeared, were *alive?*

The opinion of the Court was delivered by

LEWIS, J.—Mrs. Valeria Evans, after her marriage with Evan R. Evans, became seised in fee, in her own right, of a tract of land in Butler county. On the 30th Oct. 1831, she joined with her husband in giving a mortgage thereon to George N. Cook for $2163, which was duly acknowledged and recorded. On the 28th Aug. 1833, a *scire facias* on the mortgage was prepared, and on the same day, without any service of the writ, an attorney appeared for the defendants and waived the service. He says, he appeared at the request of the husband, and not of the wife. On the 11th Sept. 1833, the same attorney entered a confession of judgment for the amount due. Shortly after the entry of this judgment Mrs. Evans died, and on the 27th May, 1834, a *præcipe* was prepared for a *scire facias* to revive it against the husband, in his own right, and as administrator of his deceased wife; and thereupon Evan R. Evans appeared and waived the service of the writ. The *scire facias* is *quare execu. non,* and was made out afterwards, June 14; and on the 18th Oct. Evans confessed judgment individually, and as administrator of his deceased wife. On this the land was sold. It is, of course, a mere judgment that execution should issue; and it is not necessary to inquire into its defects, if, without it, an execution issued and executed would not have been void. That it would not is clear from Speer *v.* Sample, 4 *Watts* 367, and other cases cited by defendants' counsel.

[Evans *v.* Meylert.]

The original judgment, without the revival, if not void, was sufficient to pass a valid title to the purchaser at sheriff's sale. A reversal of it for error would not affect the title of the sheriff's vendee. Where there is an appearance by attorney for persons competent so to appear, and judgment is entered by confession or otherwise, third persons, who purchase property on the faith of such judgment, are never affected by a want of authority in the attorney. He is an officer of the Court, and the only remedy, after rights have vested under a judgment so obtained, is by action at the suit of the party for whom he appeared: 1 *Salk.* 86, 88; 6 *Mod.* 16; 9 *East* 471. Even if objections had been made to the judgment before the rights of purchasers had been acquired under its authority, it would not have been vacated for want of authority in the attorney to appear. The Court would merely have permitted the plaintiff's demand to have been contested, ordering the judgment to stand as security for the amount: Coxe *v.* Nicholls, 2 *Yeates* 546. Where an appearance is thus entered for persons competent to appear by attorney, it never can be necessary for third persons to go into parol evidence to prove the authority of the attorney; nor can it be proper to permit the parties to such judgment to resort to the like evidence to invalidate the title acquired by innocent purchasers under it. No title, thus derived, can be invalidated in that way. No judgment can be thus impeached in a collateral proceeding.

This brings us to the question, whether the husband and wife, in the action on the mortgage, could appear by attorney. It is true, that in an action against husband and wife to charge her separate estate, she is entitled to actual service, and to appear on her own account: 2 *Rop. Husband and Wife* 265; *Hoff. Ch. Pr.* 106; 1 *Daniel's Ch. Pr.* c. 4, § 6; 20 *Wend.* 574. This is because in such cases the husband is only a nominal party. But the property mortgaged here was not separate property. It was an estate which the husband held in right of his wife. At common law he was tenant by the curtesy initiate; he was recognised as one of the *pares curtis;* he might do homage to the lord without joining his wife. He had sufficient interest to levy a fine which would bind the wife after five years' non-claim; his estate was of a nature so permanent that it could not be determined by the death of his wife, or the coming of age of his children: 2 *Bl. Com.* 127; *Id.* 356. Holding such an estate in right of his wife, and thus deeply interested in favor of maintaining his title, the law deems him well worthy of trust in all matters relating to its defence in actions brought jointly against himself and his wife, for the purpose of affecting the title thus held. It is therefore well settled that the husband may appoint an attorney for both, and this is the reason why a *feme covert*, when thus joined with her husband in an action, may appear by attorney, Pincent's Ex. *v.*

[Evans v. Meylert.]

Tremaine, 2 *Sand. Rep.* 213; 2 *Arch. Prac.* 158; 9 *Ves.* 488; 8 *Ala.* 605; 2 *John. Ch. R.* 139; 1 *Paige* 422. It is said that her estate *after his death* was separate; but this is not the point of time at which we are to look. At the institution of the suit there was, as we have endeavored to show, such a community of interest as repelled all presumption that the husband would collude to have the property falsely condemned, and that therefore the law clothed him with full power to appear for himself and his wife.

But it is said that the sheriff's sale of the land was after the death of the wife, and without notice to her heirs. To this there are two answers. At the time these proceedings took place, a sale of the land of the decedent, on a judgment against his administrator, was binding on the heir, although the latter had not been made a party. The husband was a party representing himself to be administrator of his wife; and after a purchaser has acted on the faith of that representation, neither the husband nor those who claim title to the administration under him, can be allowed to allege the contrary. As the rights of creditors are not involved in this question, the administration on the wife's estate must go to the next of kin of the husband, who are unquestionably bound by any estoppel which would affect him: Commonwealth *v.* Shuman's Adm'rs., 6 *Harris* 343. But if this were not the case, and the heir had neither actual nor constructive notice of the judgment and proceedings on the mortgage, the only effect would be to give her a right, in an ejectment by the sheriff's vendee, to make any defence which would have been open to her on the *scire facias.* This principle has been too long settled to be overturned: Nace *v.* Hollenback, 1 *Serg. & R.* 548 (1815); Mather *v.* Clarke, 1 *Watts* 491.

If the plaintiff in error was not concluded by the judgment on the mortgage, it was her business as well as her right to make defence against it on the trial of this ejectment. It does not appear that she has been precluded from making any defence in this action which she could have made to the *scire facias.* But no sufficient defence was shown. The attempt to prove coercion of the wife by the husband in procuring her signature to the mortgage was an entire failure. No evidence of payment was given or offered. In fact, no defence whatever has been shown which could avail the plaintiff in error, even if the case stood entirely unaffected by the judgment on the mortgage, and the proceedings thereon. If the judgment was thought to be irregular, we must not lose sight of the fact that the money of the sheriff's vendee has been applied to the satisfaction of the mortgage on which it was founded, and that he has thereby acquired a right to stand in the shoes of the mortgagee. He has also another mortgage of his own. His purchase was in good faith. To dispossess him

[Evans *v.* Meylert.]

without payment of the debts for which the land was pledged by the owners, would be contrary to equity.

Upon the whole, we are unable to perceive any ground, either in law or equity, for reversing this judgment.

Judgment affirmed.

WOODWARD, J., dissented.